# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **INFINITE ALLAH, ETC.,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00075 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **THE COMMONWEALTH OF** ) | By: James P. Jones |
| **VIRGINIA,** ) | United States District Judge |
| ) | |
| Defendant. ) | |

*James A. DeVita, Arlington, Virginia, for Plaintiff; William W. Muse, Senior Assistant Attorney General, Public Safety and Enforcement Division, and Kenneth T. Cuccinelli, Attorney General, Richmond, Virginia, for Defendant.*

In this civil action for declaratory and injunctive relief, a Virginia inmate asserts that the prison's refusal to recognize his religious group impermissibly burdens the exercise of his religious faith. The defendant Commonwealth of Virginia contends that the action must be dismissed because the inmate did not fully exhaust his available prison administrative remedies. For the reasons that follow, I find that the plaintiff has adequately exhausted those remedies.

I

The plaintiff, a Virginia inmate, asserts that his prison's refusal to recognize his religion violates his rights protected under the First Amendment and 42 U.S.C.A. § 1983 (West 2003), as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. §§ 2000cc-2000cc-5 (West 2003). The defendant, the Commonwealth of Virginia (the "Commonwealth"), has filed the present Motion for Summary Judgment, arguing that the state is entitled to sovereign immunity from the § 1983 claim and that the plaintiff has failed to exhaust his prison administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997(e) (West 2003).

The plaintiff has since conceded the application of sovereign immunity to his § 1983 claim. The plaintiff continues to contest, however, the Commonwealth's exhaustion defense as to the RLUIPA claim.

The facts of the exhaustion defense are uncontested, and thus the issue of whether the plaintiff properly exhausted his prison administrative remedies is purely a matter of law. These facts are as follows.

The plaintiff is a prisoner in the custody of the Virginia Department of Corrections ("VDOC") and is incarcerated at the Wallens Ridge State Prison ("WRSP"), located in Big Stone Gap, Virginia. Allah asserts that he is a member of

a religious group called The Nation of Gods and Earths ("The Nation"). The Nation's members "believe that the world's population is divided into three categories: the Ten Percent who teach the Eighty-Five Percent to believe in a mystery God that can not be seen and the Five Percent who do not believe in the teachings of the Ten Percent and who believe in the true and living God as well as freedom, justice, and equality for all human families of the planet earth."[1] (Compl. 2, Oct. 4, 2010, ECF No. 1.)

On January 27, 2010, Allah submitted to Mrs. M. Hensley, a Treatment Program Supervisor at WRSP, two official VDOC forms via certified mail — a "Request for DOC Recognition of Religious Group" and a "Routing Slip for Recognition of Religious Group" (hereinafter referred to collectively as the "Request Form").[2] The mailing was delivered and signed for, although the signature is illegible.

Almost six months later, Allah filed an "Informal Complaint" with VDOC. In it, Allah described the nature of his complaint as follows:

---

[1] Based on these beliefs, members of The Nation are sometimes referred to as "Five Percenters," although this does not appear to be the group's preferred terminology. *See Johnson v. Jabe*, No. 7:09CV00300, 2010 WL 3835207, at *1 n.1 (W.D. Va. Sept. 30, 2010).

[2] The Request Form was mailed by a Shaheed Omar, who appears to have some undefined relationship to Allah through The Nation.

> I have repeatedly requested to be notified by the TPS' office, as to the status of my application for DOC Recognition of the Nation of Gods and Earths as a legitimate way of Life/Religion. I have never received any responses to my Request Forms . . . I want to know whether the application has been filed or not; so that I may inform my attorney about this inquiry.

(Allah Aff., Ex. 1, Nov.14, 2010, ECF 9-1.) VDOC responded, "The TPS Office has not received a request form or an application of Service for Nation of God [sic] & Earth [sic]." (*Id.*)

Promptly thereafter, Allah filed a "Regular Grievance Form." On this form, Allah described his complaint as, "The issue is my not receiving any notification as to the status level of the submitted application for DOC Recognition of the Nation of Gods and Earths . . . as a Way of Life/Religion." (*Id.*) He requested that VDOC "have [the] evidently misplaced application found and processed, as there are legal ramifications for the hindering [of] 1st and 5th Constitutional Amendments issues, as I have the right to exhaust all administrative remedies afforded to me, in order to clarify my claims in the Federal Courts." (*Id.*) Allah's Regular Grievance Form was returned as not accepted because VDOC read his complaint to be a non-grievable "Request for Services." (*Id.*)

Allah next appealed the non-intake of his Regular Grievance to VDOC's Western Regional Office. He detailed in this appeal the steps taken at the lower

levels of the administrative process and his inability to receive a response from Mrs. Hensley regarding his request form. He charged that, "the administrative staff at WRSP ([s]pecifically the Treatment and Ombudsman's Offices) are consciously denying me the ability to exhaust all remedies afforded me, and are placing an illegal governmental burden upon my implementation of my [F]irst Amendment Right to practice and live by my chosen way of life." (*Id.*) The Regional Ombudsman upheld the intake rejection.

Allah responded by filing the current action against the Commonwealth, asserting a deprivation of his civil rights as protected under the First Amendment and 28 U.S.C.A. § 1983 and a RLUIPA violation. He seeks relief in the form of declaratory judgment and an injunction directing VDOC to recognize The Nation as a religious group and to accord its members the ability to meet and conduct religious services.

The parties have briefed the Commonwealth's exhaustion defense and presented oral argument, and the motion is ripe for decision.

II

By virtue of the PLRA, before an inmate may bring a claim under the RLUIPA he or she must first fully exhaust all available administrative remedies. *See* 42

U.S.C.A. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Failure to exhaust is an affirmative defense and the burden falls on the defendant to prove the inmate's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The exhaustion requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). An inmate must exhaust available administrative remedies before filing suit and is not entitled to a stay of the proceedings in order to cure exhaustion deficiencies. *See Johnson v. Taylor*, No. 7:08cv00022, 2009 WL 691207, at *5, n.16 (W.D. Va. Mar. 16, 2009). If the defendant adequately demonstrates an exhaustion defense, the inmate's case is deemed procedurally defective and must be dismissed. *Booth*, 532 U.S. at 741.

The administrative remedies available to prisoners in Virginia's prison system are codified in Division Operating Procedure ("DOP") 866, effective November 1, 2007, entitled "Offender Grievance Procedure" ("OGP"). (Def.'s Answer, Ex. 1, Oct. 28, 2010, ECF No. 6.) The OGP system provides for three levels of administrative review of inmate grievances as follows.

> First, an inmate must file an "Informal Complaint" at the facility level, to which the facility must respond within fifteen days. The Informal Complaint demonstrates that the inmate has made a good faith effort to resolve the issue informally.
>
> In the event of non-response or a negative response, the inmate then has thirty calendar days from the date of the incident in which to file a "Regular

Grievance" with the Warden/Superintendent's office for processing by the Institutional Omsbudsman/Grievance Coordinator. Regular Grievances are either accepted or rejected on intake.

(*Id.*)

Accepted Regular Grievances may then be further reviewed at the regional level.[3]

Allah's Regular Grievance was not accepted for intake at the second level, and thus VDOC's procedure for appealing intake decisions applies here. VDOC's OGP provides that an inmate seeking a review of an intake decision may send his Regular Grievance form within five calendar days of receipt to the Regional Omsbudsman for further determination. (*Id.*) If the Regional Omsbudsman rejects this appeal, there is no further review, and at that point the inmate has exhausted his available administrative remedies. (*Id.*)

It is apparent that Allah properly followed the procedures outlined in the OGP. Allah first filed a Request for Religious Recognition form.[4] When he received no

---

[3] Accepted Regular Grievances may be reviewed at Level I, by the Warden or Superintendent; Level II, by the Regional Director, Health Services Director, or Chief of Operations for Offender Management Services; or Level III, by the Deputy Director or Director. Because Allah's Regular Grievance was not accepted, his complaint never reached this level of review.

[4] It is not clear under the current record how VDOC's Request for Religious Recognition relates to its OGP. The Request Form is an official VDOC document, entitled "Operating Procedure 841.3," but this procedure is not mentioned in the OGP.

response to that form, Allah then timely filed an Informal Complaint, which was rejected, and a subsequent Regular Grievance. VDOC did not accept Allah's Regular Grievance form for intake because it determined his complaint to be a non-grievable "Request for Services." Allah then appropriately followed the process to contest the intake rejection, which was also denied, thus ending his ability to administratively pursue his complaint further.

The Commonwealth contends, however, that although Allah followed its procedures correctly, he still did not properly exhaust. For the purposes of this motion, the Commonwealth argues that Allah's Informal Complaint and Regular Grievance did not request recognition of The Nation, but rather that his filings grieved only the non-response to his original Request Form. Thus, the Commonwealth contends that Allah has only grieved a request for services, and has not exhausted the underlying recognition request.

At oral argument, the Commonwealth made several important concessions. The Commonwealth conceded that Allah did, in fact, file the original Request Form, and that there was no response to that form. Counsel for the Commonwealth admitted that the Request Form should have been responded to in a timely fashion, and that it was an error not to do so. The prison authorities have yet to respond to Allah's original Request Form, and at oral argument the Commonwealth gave no

indication that they intend to do so.[5] Nevertheless, the Commonwealth suggests that Allah should have styled his grievance by essentially going a step further — not only stating that he had filed the Request Form and that it had not been responded to, but also that he interpreted WRSP's non-response to constitute a rejection of his request, thus allowing him to present the non-recognition grievance directly. The Commonwealth agreed that if Allah were to re-file his grievance as suggested, VDOC would not contest Allah's proper filing of the initial Request Form.

III

Despite the Commonwealth's suggestion, these facts present an untenable situation for a prisoner in Allah's position. Allah received no response, and to this day has no response, regarding his Request Form, without explanation from prison officials. Taking his allegations as true, Allah continues to be unable to meet with other members of The Nation or to conduct other activities important to his beliefs. His filings demonstrate his effort to fully exhaust VDOC procedure before resorting

---

[5] Counsel for the Commonwealth indicated at oral argument that VDOC's position in the past has been to deny recognition of The Nation, and that its exhaustion defense here may very well simply delay an inevitable suit. This assertion comports with the affidavit of B. Ravizee, the Institutional Ombudsman at WRSP, in which he affirms that "the Virginia Department of Corrections will not recognize the Five Percenters as a valid religion." (Ravizee Aff. ¶ 3, Oct. 28, 2010, ECF No. 6-1.)

to federal litigation, and through these efforts, Allah repeatedly placed prison authorities on notice of his underlying recognition request. In spite of this notice, VDOC instead failed to address the request and effectively denied Allah's efforts to obtain review.

The PLRA's exhaustion requirement obligates an inmate to exhaust only "such administrative remedies as are available" to him. 42 U.S.C.A. § 1997e(a). As the Fourth Circuit has recognized, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). A prisoner need only demonstrate that he "utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively."[6] *Id*. (internal quotation marks and citation omitted). Having done so, "a prisoner has exhausted his available remedies, even if prison employees do not respond." *Id; see also Finley v. Gonzales*, No. 1:08-cv-00075 LJO DLB PC., 2009 WL 382744, at *5 (E.D. Cal. Feb. 13, 2009), *report and*

---

[6] Indeed, there is some precedent to support finding the exhaustion requirement met even when the inmate apparently abandons the administrative review process and files suit in reaction to administrative non-responsiveness. *See, e.g. Randolph v. City of New York Dep't of Corr.*, No. 05 Civ. 8820(GEL)(MHD), 2007 WL 2660282, at *9, *9 n.9 (finding exhaustion where the allegations were susceptible to a reading that might excuse incomplete compliance).

*recommendation adopted*, 2009 WL 982082 (E.D. Cal. Apr. 9, 2009) (noting that most circuits recognize a similar rule).

The submission of the initial Request Form, as well as Allah's subsequent follow-up through all available levels of the OGP, demonstrate that prison officials were provided with a full and fair opportunity to address Allah's claims administratively. *Compare Williams v. City of New York*, No. 03 Civ. 5342(RWS), 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005) (finding that even if the prison fails to respond, the inmate must still pursue all remaining steps in order to exhaust), *with Randolph*, 2007 WL 2660282, at *7-9 (rejecting an exhaustion defense where the pleadings might indicate a valid attempt to exhaust or a valid excuse for failure to exhaust). When Allah brought the non-response of his Request Form to VDOC's attention by way of his Informal Complaint, VDOC claimed (inaccurately, it appears) that it had not received it. His appeal of this rejection was then further stymied at the Regular Grievance level, when VDOC refused to inquire into his complaint further by characterizing his complaint as a non-grievable request for services. Although his complaint was not characterized as the Commonwealth suggests it should have been, Allah did pursue his complaint through all levels of the system and provided VDOC with notice of his underlying claim.

This second dismissal, in particular, also does not appear to comply with VDOC's own administrative procedures. Under the OGP, an inmate dissatisfied with the response to a grievance may appeal, indicating reasons for his dissatisfaction with the prior response. (OGP 3.) Notably, under the OGP's definition of "[g]rievability," the policy states that procedures and actions of the facility which affect the grievant personally, *including any denial of access to the grievance procedure*, constitute grievable complaints. (*Id*. at 5) (emphasis added.)) Moreover, although the OGP provides a list of non-grievable matters, a "request for services" is not a reason enumerated on this list.[7] (*Id.*)

Considering these facts in their totality, the Commonwealth has failed to meet its required burden of proof to succeed on its exhaustion defense. Moreover, no further efforts at exhaustion of administrative remedies are required by the plaintiff. VDOC's silence to Allah's Request Form, as well as VDOC's repeated dismissals of Allah's attempts to bring that silence to VDOC's attention, have sufficiently

---

[7] Even if VDOC's non-response was a non-grievable issue, the Commonwealth has failed to explain, and its suggested remedy fails to address, how Allah could seek to remedy VDOC's apparent silence. By his knowledge, his Request Form had been lost or ignored, and nothing in the record would lead a prisoner in his position to believe that re-filing a new Request Form would lead to a different result. A complaint that has been adjudged to be not addressable under the grievance process closes the defendants' ability to assert an exhaustion defense in response. *See, e.g. Pearson v. Vaughn*, 102 F. Supp. 2d 282, 288 (E.D. Pa. 2000) (citing *Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999)).

frustrated his efforts to review his recognition request. Allah's efforts squarely and repeatedly placed his request to practice his religion before the prison authorities, such that they had ample notice and opportunity to respond to his request.

That VDOC has evidently chosen to defend Allah's complaints on procedural vagaries does not demonstrate a failure to exhaust on Allah's part. VDOC made a mistake when it misplaced Allah's form, and even if the mistake was not ill-intentioned, the admitted responsibility lies with VDOC to rectify this error.

Despite this error having now been brought fully to its attention and a full year passing since the Request Form's initial filing, prison officials still have not answered it. Furthermore, counsel has given no indication that VDOC intends to do so, and even if they did, they've indicated the response would likely be in the negative. Dismissing the current action and allowing Allah to re-file administratively, rewording his grievance as a direct denial of religious recognition, would indeed grant the prison another chance to reject him. However, under these circumstances, that additional delay and effort is not required.

IV

For the foregoing reasons, it is **ORDERED** as follows:

1. The Commonwealth's Motion for Summary Judgment (ECF No. 6) is GRANTED IN PART and DENIED IN PART;

2. The motion is granted as to Count One ("Violation of First Amendment Right to the Free Exercise of Religion, 42 U.S.C. Section 1983"); and

3. The motion is otherwise denied.

ENTER: January 24, 2011

/s/ JAMES P. JONES
United States District Judge